[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 270 
Appellants are Aetna Casualty and Surety Company and the executors of the will of C.O. Osborn. They appeal from a judgment on a supersedeas bond rendered by the Circuit Court of St. Clair County in favor of appellees, the Rileys. That judgment, rendered on January 27, 1975, ordered Osborn, as the principal, and Aetna, as the surety, to pay the Rileys the sum of $20,000 plus court costs.
The litigation in this cause began in the spring of 1973 when the Rileys brought suit against C.O. Osborn, James G. Clark, Jr., and Ray Wyatt seeking to set aside, because of undue influence, a deed by which the Rileys had conveyed a large tract of land to Osborn. On May 7, 1973, the circuit court declared the deed to be null and void on the basis of the court's finding of undue influence.
On May 21, 1973, Osborn, intending to appeal, filed with the circuit court an ex parte application to fix the amount of a supersedeas bond. That same day, the court granted the application, setting the supersedeas bond at $5,000 conditioned on the requirement that Osborn pay any judgment the appellate court might render as well as "such costs and damages as any party may sustain by reason of the wrongful appeal and suspension of the decrees." Osborn obtained a $5,000 supersedeas bond from Aetna Casualty and Surety Company, which was approved by the Register and filed that same day.
On May 28, 1973, after receipt of the decree fixing the supersedeas bond at $5,000, the Rileys filed a motion to increase the amount of the supersedeas bond based on their contention that $5,000 was inadequate to supersede the decree. This motion was presented to the trial court on May 28, 1973, and set for hearing on June 6, 1973. A copy of the motion and order was served on appellant Osborn's attorneys.
On June 6, 1973, the motion came on to be heard with the attorneys for the parties present. After considering the matter, the court modified its earlier decree and increased the amount of the supersedeas bond from $5,000 to $20,000. No objection was made thereto by appellant Osborn, but he made the bond with Aetna as surety.
On appeal, this Court affirmed the circuit court's judgment. [See Wyatt v. Riley, 292 Ala. 277, 293 So.2d 288 (1974).]
Osborn's appeal having been unsuccessful, the Rileys then filed suit on Osborn's bond with Aetna, demanding payment of damages in the amount of $20,000. The Rileys contended that Osborn's failure to successfully prosecute his appeal and his failure to pay all of the Rileys' costs and damages constituted a breach of the condition of the supersedeas bond. Osborn defended on the grounds that the Rileys did not prove that they were damaged by virtue of Osborn's appeal or that the appeal was wrongful. The circuit court rendered judgment in favor of the Rileys in *Page 271 
the amount of $20,000 plus costs. That judgment is now challenged by Aetna and by the executors of Osborn's estate (Osborn being deceased).
First, appellants claim that the circuit court's order of June 26, 1973, which increased the supersedeas bond from $5,000 to $20,000, is void for lack of jurisdiction. Appellants rely on Tit. 7, § 766, Code of Alabama of 1940 (Recomp. 1958), which provides that an appeal "shall be shown . . . (c) By giving and having approved a supersedeas bond. . . ." Appellants contend that the filing of the first supersedeas bond on May 21, 1973, perfected their appeal to this Court, thereby invoking our jurisdiction and divesting the trial court of any further jurisdiction in the premises.
To support this contention, appellants cite a line of cases which hold that the filing and approval by the clerk of a supersedeas bond is sufficient to perfect an appeal and to transfer jurisdiction to the appellate court. But, the primary issue in all the cases cited by appellants is the question of the trial court's right to rule on a motion for new trial after jurisdiction over the cause has been transferred to an appellate court by the filing of a supersedeas bond. The unanimous holdings of these cases is that, under such circumstances, the lower court's jurisdiction to consider a motion for new trial is suspended. See: Johnsey-Reed Bros. CoalCo. v. Sanders, 275 Ala. 339, 154 So.2d 923 (1963); MacMahon v.Dozier, 237 Ala. 574, 187 So. 710 (1939); Lewis v. Martin,210 Ala. 401, 98 So. 635 (1923); Sharp v. Edwards, 203 Ala. 205,82 So. 455 (1919).
However, this authority is not controlling under the instant facts, since no motion for new trial is involved here. Moreover, other cases included in that same line of authority do not support appellants' application of the rule to these facts. In Barran v. Roden, 263 Ala. 305, 307, 82 So.2d 398, 399
(1955), this Court set out a limitation on the rule that, after an appeal is taken, the trial court cannot rule on any matter involving the appeal:
 ". . . The rule is stated to be that after an appeal is taken, the lower court `may proceed in matters which are entirely collateral to that part of the case which is taken up (by the appeal) but it can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court.' This is a limitation on the rule that after an appeal is taken the trial court cannot, pending that appeal, pass upon any matter involved on the appeal. . . .
 "As to those matters which are entirely collateral to the questions involved on appeal, the court and parties are free to proceed notwithstanding the appeal if taken, or without affecting the right to appeal if not then taken. 4 C.J.S., Appeal and Error, § 212e, p. 401."
Accord: Francis v. Scott, 260 Ala. 590, 72 So.2d 93 (1954); Exparte Taylor, 251 Ala. 387, 37 So.2d 656 (1948); Ex parte CityCouncil of Montgomery, 114 Ala. 115, 14 So. 365 (1896).
Clearly, the filing of the first supersedeas bond on May 21, 1973, did constitute the taking of an appeal as of that date under the authority of Tit. 7, § 766. Consequently, all jurisdiction over those matters adjudicated, and from which the appeal was taken, was transferred to the appellate court on May 21, 1973. However, as has been established in cases such asBarran v. Roden, it is equally clear that the trial court retains its power to pass on matters collateral to the matter appealed. Some guidance for the determination of what constitutes a collateral matter for these purposes may be gleaned from this Court's opinion in Allen v. Allen, 80 Ala. 154
(1885), in which the following language appears:
 "We do not doubt that, when a decree has been rendered by a court of equity, *Page 272 
and an appeal has been prosecuted to this court from such decree, a chancellor would no longer have such jurisdiction of the cause as would enable him to render any further decree affecting the rights and equities of the parties in the same cause during the pendency of the appeal.
 "The present motion, however, is a separate and distinct proceeding from the chancery suit which culminated in the decree from which the appeal in question was taken. It is based upon grounds which have nothing to do with the equities involved in and settled by that decree, and which have even originated subsequent to its rendition. The purpose
 of the motion is not to raise any question going behind the decree or concluded by it, but only to prevent any abuse of the process of the court by the agency of which it is sought to enforce the execution of the decree. It is manifest that whatever course may be taken by the appellate court as to the decree appealed from, whether it be affirmed or refused, the questions arising from this motion would neither be discussed nor determined."
80 Ala. at 155-56.
Much like the motion in controversy in the Allen case, the Rileys' motion for an additional supersedeas bond is part of a proceeding that is separate and distinct from the decree appealed from. The question presented by the Rileys' motion, that is, whether the original $5,000 supersedeas bond adequately protected the Rileys' interest in the court's order entered in their favor, does not involve the rights and equities relative to the question of whether their deed should have been set aside. The Rileys' motion does not raise any question going behind the decree appealed from, nor does it raise any question decided by that decree. In short, the Rileys' motion presented a question which is clearly collateral to the questions raised by Osborn's appeal of the court order setting aside the deed.
Moreover, in Ex parte Farrell, 196 Ala. 434, 71 So. 462
(1916), this Court quoted with approval the following language from the Virginia case of Cralle v. Cralle, 81 Va. 773 (1886):
 ". . . the effect of an appeal, when fully perfected by the execution of the proper supersedeas bond, is to deprive the subordinate court of all power over the parties and subject-matter of controversy . . .; and the only orders, therefore, which that court can rightfully make are such as are needful for the preservation of the res and the rights of the parties pending the appeal."
Id., 196 Ala. at 436-437, 71 So. at 463. So, it is that the Rileys' motion for additional bond involved a matter necessary for the full protection of their rights pending Osborn's appeal, hence the language approved in Farrell is applicable under the facts of the instant case.
Tit. 7, § 794, Code of Alabama of 1940 (Recomp. 1958), makes the amount of a supersedeas bond, under circumstances such as those of the instant case, a matter within the trial court's discretion. In Ex parte Edwards, 20 Ala. App. 567, 104 So. 53
(1925), the Court of Appeals held:
 ". . . the law does not vest in this court the power to fix the amount, but vests that authority and power in the trial court, and does not vest in this court the authority or power to revise the erroneous action of the trial court by mandamus."
20 Ala. App. at 569, 104 So. at 54.
If the amount of a supersedeas bond is a matter within the trial court's discretion, so, it would seem, is a later modification or revision of that amount, particularly when it is within thirty days of the original order. Thus, jurisdiction over the Rileys' *Page 273 
motion was retained by the circuit court not only because of the collateral nature of the motion, but also because of this statutory provision.
Promptly after learning of the ex parte proceeding in which Osborn's request for supersedeas bond was granted, the Rileys made their motion for an increase in the bond. Nor does it appear that any objection was made to the trial court in regard to the Rileys' motion. The trial court received the motion well within the thirty-day grace period during which the cause remained "within the breast of the court." Ward v. Blackwell,269 Ala. 632, 634, 115 So.2d 41, 42 (1959). We find no reversible error in the trial court's order increasing the amount required for Osborn's supersedeas bond.
The second issue raised by this appeal concerns the cross-examination of Mr. Riley. Mr. Riley testified on direct examination that he paid his attorneys $22,500 "in connection with the appeal." When asked whether any of the $22,500 was paid for trying the case before the circuit court, Mr. Riley replied, "I don't think so." Counsel for appellants then sought to adduce testimony regarding the total amount of legal fees paid by Mr. Riley in connection with the trial of the case and the prosecution of the appeal, but the court sustained appellees' objection to the question. Appellants argue that if they could have shown that the Rileys paid a $22,500 legal fee for the appeal but paid no fee for the trial, then it would be apparent that not all of the $22,500 was paid for services connected solely with the appeal.
The total amount Mr. Riley paid his attorneys for their services for the trial of the case as well as for the appeal is not, in itself, relevant to a determination of the damages caused the Rileys by the appeal. That line of questioning becomes relevant only to the extent that it relates to the question of the amount of legal fees paid solely for the appeal. We agree with the appellants that proof that $22,500 was the total amount of legal fees paid by the Rileys would in itself constitute circumstantial evidence that not all of the $22,500 was paid for services connected with the appeal. However, if the court's refusal to allow cross-examination on this point was error (a question that we need not reach on the facts of this case), it was harmless error. The information that appellant claims to have sought by cross-examination on this point, that is, whether the $22,500 included legal services at trial, was directly asked the witness on cross-examination in the following exchange:
"Q What did you pay?
 THE COURT: How much? I will let you ask this: How much of the twenty-two thousand five hundred dollars was paid on the basis of this appeal.
 "Q How much of the twenty-two five was paid on the appeal?
"A I don't recall.
 "Q Don't recall. All right. Could some of the twenty-two five have been for trying the case here before Judge Waid?
"A I don't think so.
"Q Do you know?
"A No. I don't know."
Moreover, counsel for the Rileys (on the appeal) testified that they were paid $22,500 for the appeal only.
The third issue presented for our review arises from appellants' contention that the Rileys suffered no injury as a result of the appeal and the accompanying suspension of their judgment during the pendency of the appeal. It is undisputed that, during the appeal, appellees were in possession of the land over which the dispute arose. Appellants contend that because the appellees were in possession of the land over which the dispute arose, it cannot be argued that they were harmed by the suspension of the court's decree. *Page 274 
These arguments are not persuasive in view of the rule of our cases. The purpose of a supersedeas bond is "to keep the parties in status quo pending the appeal. This purpose . . . reach[es] not only to possession of the property, but every other consequence of the judgment, including costs, and the evidential status and value of the judgment pending appeal. Delay in the settlement of the title in the plaintiff was consideration enough to support the bond." Fidelity DepositCo. v. Torian, 221 Ala. 131, 133, 127 So. 829, 831 (1930). It was there held that there could be recovery on the bond notwithstanding appellant was not in possession. In the instant case, the appellees were damaged not only by a delay in the settlement of title, but also by the expense of defending their judgment.
As was stated in Torian, supra, although the appellant "was never in possession, [she] did secure by the bond whatever benefit she may have considered the suspension of the judgment afforded her pending the appeal and operated as a detriment to appellee in postponing the settlement of his title."
The fourth and final issue raised on appeal challenges Alabama case law allowing the recovery of attorney's fees paid for defending the appeal as an element of damages to be recovered under the supersedeas bond in a suit of this character. Appellants argue that neither the statute providing for supersedeas bonds, nor the decree in the instant case, specifically includes attorneys' fees as an element of damages. In the absence of express statutory or contractual provision to the contrary, appellants contend that there is no "inherent right to have attorney's fees paid by the opposing side." On the basis of case law from other jurisdictions which is in conflict with the existing Alabama rule, appellants urge this Court to hold that damages in suits on supersedeas bonds in a suit of this character should include only those damages resulting from the stay of execution of the judgment. Specifically appellants ask that we overrule our case of Drakev. Webb, 63 Ala. 596 (1879) and those cases following it.
Appellant refers the Court to its recent opinion in White v.State, 294 Ala. 502, 319 So.2d 247 (1975), in which this Court held that attorneys' fees were not recoverable as "just compensation" in eminent domain proceedings. However, the issue in White was a matter of first impression in Alabama. In contrast, the issue in the instant case involves the recovery of attorney's fees as an element of damages under the supersedeas bond, in a suit of this character, and is the subject of a long-standing rule in this state. See, e.g.Dempsey v. Gay, 227 Ala. 20, 148 So. 438 (1933); Fidelity Deposit Co. v. Torian, 221 Ala. 131, 127 So. 829 (1930);Caldwell v. United States Fidelity Guar. Co., 205 Ala. 463,88 So. 574 (1921); Drake v. Webb, supra; Wheeler v. Fuller,4 Ala. App. 532, 58 So. 792 (1912). [See Anno: "Attorneys fees paid by appellee in resisting unsuccessful appellate review as damages recoverable on appeal bond" 37 ALR.2d 525.]
In Drake v. Webb, supra, Justice Stone makes the following statement as the rationale for the Alabama rule:
 "We find nothing in the condition of the present bond which we consider unreasonable. The damages imposed are not a tax, or clog, placed on the appellant's right of appeal. That he could have had without a supersedeas bond, on giving security for costs of appeal. Such security for costs would have imposed on his surety no other liability than to pay the costs of appeal, if unsuccessful. This is a mere regulation of the right of appeal, for the security of the officers of court. But, when an aggrieved suitor desires to go further, and suspend the execution of a judgment or decree rendered against him, this is not simply a question of the right of appeal. It goes much beyond that. Very great damage may result from the appeal and the suspension. *Page 275 
The condition of a bond, entailing these consequences, should be so adjusted and prescribed, as to secure the appellee against all loss or damage that may result proximately from the appeal and supersedeas. Attorney's fees are proximate damages, cast on the appellee by the appeal, and are, therefore, within the condition of the bond. We are not able to distinguish, in principle, between this question and the kindred one which arises in suits on injunction and detinue bonds."
63 Ala. at 600.
In the absence of any substantial countervailing arguments, we decline to overturn the rule of the above-cited cases. We are mindful that "[c]onsistency of decision and adherence to precedent have always been the guiding light of a proper functioning judiciary." United States Steel Corporation v.Goodwin, 267 Ala. 612, 613, 104 So.2d 333, 334 (1958).
AFFIRMED.
HEFLIN, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.